**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

LAVONDA HARRIS,                          )   NO. EDCV 09-00384 SS
                                         )
                    Plaintiff,           )
                                         )
          v.                             )   **MEMORANDUM DECISION AND ORDER**
                                         )
MICHAEL J. ASTRUE,                       )
Commissioner of the Social               )
Security Administration,                 )
                                         )
                    Defendant.           )
_____      )

**I.**

**INTRODUCTION**

        Lavonda Harris ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") denying her application for Supplemental Security Income ("SSI").   The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge.   For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II.

### PROCEDURAL HISTORY

Plaintiff filed an application for SSI on July 8, 2004 (Administrative Record ("AR") 798), alleging, as a consequence of a car accident, disability due to blackouts, migraines, lower back pain, muscle spasms, and depression. (AR 828, 829).[1] She alleged a disability onset date of January 1, 1997. (AR 798).

The Agency denied Plaintiff's claim for SSI initially on October 20, 2004.  (AR 748).  This denial was upheld upon reconsideration.  (Id.).  On August 16, 2006, the ALJ conducted a hearing to review Plaintiff's claim.  (AR 1030).  The ALJ denied benefits on December 15, 2006.  (AR 745).  Plaintiff sought review of the ALJ's decision before the Appeals Council, which granted review on October 9, 2008.  (AR 741).  The Appeals Council denied benefits on January 9, 2009.  (AR 734).  Plaintiff commenced the instant action on March 3, 2009.

//

//

//

//

//

---

[1]  Plaintiff's written application was dated July 8, 2004.  (AR 798).  The Field Office Disability Report lists a protective filing date of June 17, 2004.  (AR 825).  The Administrative Law Judge ("ALJ") states Plaintiff protectively filed on both June 14, 2004 (AR 748) and on June 17, 2004 (AR 756).  Because the outcome of this case does not turn on the filing date, the Court will use the date of Plaintiff's written application, as the parties do.  (See Joint Stipulation ("Jt. Stip.") at 2).

2

### III.

### FACTUAL BACKGROUND

Plaintiff was born on July 31, 1954 and was fifty-two years old at the time of the hearing.  (AR 750, 798).  She has a twelfth grade education.  (AR 750).  She has past work experience as a cashier. (Id.).

## A.   **Plaintiff's Medical History**

Plaintiff's injury occurred in 1997 when a truck rear-ended the car she was driving.  (AR 1048).  Between June 1998 and April 2003, she sought treatment for lower back pain.  (See AR 854-55, 859, 860, 862, 863, 864, 868, 871, 872, 874, 880, 882).  In September 1998, Dr. Jonathan R. Greer evaluated her functional capacity and assessed that she could perform limited lifting of twenty pounds and repeated lifting of ten pounds and could walk and sit up to six hours.  (AR 875-76).  She received physical therapy for lumbar strain in March 1999.  (AR 851-52). In July 2000, Dr. Deborah Small noted that Plaintiff could ambulate without assistance, had a normal gait, and could walk on her toes with no discomfort and walk on her heels with mild discomfort.  (AR 864). Dr. Small diagnosed Plaintiff with acute muscle spasm with sciatic nerve involvement.  (Id.).  In August 2001, Dr. Small made a similar assessment and wrote Plaintiff a prescription for a cane.  (AR 861). During the same period, Plaintiff also sought treatment for headaches, for which she was prescribed medication.  (See AR 872, 876, 880, 882). She further received treatment for depression.  (See AR 865, 867, 868). Plaintiff's doctors regularly refilled or changed prescriptions to treat

3

these complaints.  (See AR 859, 862, 863, 864, 865, 867, 868, 872, 874, 876, 879, 881, 882).  Plaintiff also attended health maintenance appointments, including appointments for mammography.  (AR 850, 857, 860-61, 868, 873).  In December 2002, Plaintiff complained of blackouts. (AR 855).

In February 2004, after undergoing diagnostic imaging of the cervical spine, Plaintiff was diagnosed with degenerative arthritis at C5 through C7 with no significant neural foramen encroachment.  (AR 969).  A CT Scan performed in July 2004 showed no brain abnormalities. (AR 1015).  X-ray films taken in May 2005 showed mild degenerative disease of the cervical, thoracic, and lumbar spine.  (AR 1017, 1019, 1022).  Plaintiff began complaining about pain and numbness in her upper extremities in June 2005.  (AR 983).  In December 2005, nerve conduction tests failed to show evidence of peripheral nerve entrapment or generalized neuropathy.  (AR 1013).  A January 2006 EMG of Petitioner's upper extremities showed no evidence of cervical radiculopathy.  (AR 1012).  In August 2006, Dr. Montri D. Wongworawat assessed that Plaintiff's gait was normal and that her other symptoms were "consistent with an ulnar nerve compression of her left hand and a carpal tunnel syndrome on her right."  (AR 980, 981).  During this period, Plaintiff also received treatment for hypertension, which was controlled with medication.  (See, e.g., AR 939).

//
//
//
//

**B.    Consultative Examinations**

Dr. Lyle B. Forehand, Jr., a psychiatrist, examined Plaintiff and issued his report on September 17, 2004.  (AR 890).   He found no evidence of psychiatric impairment.  (AR 895).  He noted that she "may have a post-concussive syndrome" but that it was "impossible to assess" because she was "either exaggerating her symptoms or just flat out making them up."  (Id.)  He was similarly unable to make a functional assessment because Plaintiff "has so obscured any impairment she may or may not have as to  [make it] impossible to assess."  (Id.)

Dr. Rocely Ella-Tamayo, an internist, issued her report on September 27, 2004.  (AR 898).  She noted that Plaintiff's gait was "slow but normal . . . without the use of a cane." (AR 902).  She also noted Plaintiff's "chronic back pain with mild limitation of motion of the back without evidence of peripheral neuropathy" and "history of carpal tunnel syndrome with sensory impairment on the left hand." (AR 903).  Dr. Ella-Tamayo's functional assessment was that Plaintiff

> is restricted in pushing, pulling, lifting, and carrying to
> about 50 pounds occasionally, and about 25 pounds frequently.
> Sitting is unrestricted . . . . [T]he patient is able to
> stand and walk 6 hours out of an 8-hour workday with normal
> breaks.  She might need an assistive device for prolonged
> ambulation.  She is able to kneel and squat occasionally.
> There is no functional impairment observed on both hands.

(Id.).

5

Dr. Joseph Hartman performed a Residual Functional Capacity Assessment on October 15, 2004. (AR 914). He found Plaintiff could lift fifty pounds occasionally and twenty-five pounds frequently; stand and/or walk with normal breaks for six hours of an eight-hour workday; and sit with normal breaks for six hours out of an eight-hour workday. (AR 908). Pushing and/or pulling was unlimited. (Id.). As to postural limitations, Dr. Hartman found Plaintiff could climb, balance, stoop, kneel, crouch, and crawl frequently. (AR 909). Her gait was normal and there was no need for cane use. (AR 912). Dr. Hartman asserted that Plaintiff's symptoms were credible, but that her reports regarding the persistence, intensity, and functional limitations of her symptoms were not fully credible. (Id.). Based on his assessment, he assigned Plaintiff a residual functional capacity of medium work. (AR 914).

Dr. Sarah L. Maze reported the results of Plaintiff's neurological examination on February 22, 2005. (AR 971, 975). In the mental status portion of the report, Dr. Maze found Plaintiff was alert, able to concentrate, and functioning intellectually in the normal range. (AR 973). Her general fund of knowledge was fair, although she gave "some very unusual responses to questions." (Id.). Dr. Maze reported that Plaintiff was "very poorly cooperative" and that "[h]er effort during mental status testing appears suboptimal." (Id.). Dr. Maze found "very prominent give-away testing of the left arm" and "very poor claimant effort" on testing of grip strength. (Id.). Reflexes and coordination were normal. (AR 974). Gait was normal without an assistive device and Plaintiff was able to stand on heels and toes. (Id.). There was no tenderness to palpation of the cervical or thoracolumbar spine, and no muscle spasm. (Id.). The range of motion was full. (Id.). In the

6

Comments section, Dr. Maze again noted that Plaintiff's effort throughout the exam "appeared very poor." (Id.). Dr. Maze stated that the complaints of hand numbness were "atypical for carpal tunnel" and that the Plaintiff's descriptions of blackouts were "so very vague that the cause . . . cannot be determined." (Id.). Plaintiff did "not present with any objective findings to explain her chronic complaints of head pain." (AR 975). Exertional limitations were congruent with Dr. Hartman's residual functional capacity assessment: occasional lifting of fifty pounds, frequent lifting of twenty-five pounds, and the ability to sit, stand, and walk for six hours out of an eight-hour workday. (Id.).

## C.   **Plaintiff's Testimony**

On August 16, 2006, Plaintiff appeared at a hearing before the ALJ. (AR 1028). She testified that she has a high school education. (AR 1044). She lives with her infant grandson and a roommate. (AR 1036-37). Her roommate and a neighbor help her take care of the child (AR 1037-38), whom she cannot lift. (AR 1042). She stated that she had not worked since June 17, 2004. (AR 1040). She asserted that her income amounts to $555.00 per month, from public assistance programs. (AR 1045).

Plaintiff testified that her injuries were caused by a 1997 car accident in which she was rear-ended. (AR 1048). She has muscle spasms on her right side, numbness in her arm and hands, and headaches. (AR 1040, 1050-52). She also has chronic back pain, for which she takes medication that dulls the pain for a little while. (AR 1040, 1043).

7

She is unable to sleep for a full eight hours. (AR 1040, 1046). According to Plaintiff, she takes a number of medications, including Clonidine for high blood pressure, Doculase for constipation, and Tylenol with Codeine 3 and Vicodin for pain. (AR 1042-43).

She testified that she can sit or stand for fifteen to twenty minutes comfortably and for up to an hour with pain. (AR 1046). She stated that she could pick up five pounds regularly, and ten pounds "if somebody had a gun to [her] head." (AR 1053). She uses a cane because she is afraid of falling down. (AR 1056).

Plaintiff complained of depression, and aural and visual hallucinations, but testified that she had not sought mental health treatment for the two years prior to the hearing. (AR 1054-55).

**D.   <u>Medical Expert's Testimony</u>**

Dr. Samuel Landau testified that Plaintiff had degenerative arthritis of the neck and low back, left-hand numbness of undetermined cause and non-migraine headaches. (AR 1032). He determined that the physical ailments did not meet the criteria for any listed impairment. (<u>Id.</u>) He testified that Plaintiff did not need an assistive device to walk and could stand and walk two hours out of eight and sit six hours out of eight. (AR 1033). She can lift ten pounds frequently and twenty pounds occasionally. (<u>Id.</u>) She can climb stairs occasionally. (AR 1034).

**E.   Vocational Expert's Testimony**

Vocational expert Louis Mas answered three hypotheticals posed by the ALJ.  He answered affirmatively when asked whether performance of Plaintiff's past work would be possible for a person of Plaintiff's age, education and work experience, with residual functional capacity for medium work with the following exceptions: the ability to frequently climb ramps and stairs but not ladders, scaffolds or ropes; the ability to balance, bend, stoop, crouch, kneel, squat and crawl frequently; and the requirement to avoid dangerous fast-moving machinery and unprotected heights.  (AR 1059-60).

The second hypothetical assumed a full range of light exertional work, except that the person could stand and/or walk for two hours out of an eight-hour day; could occasionally climb ramps and stairs, but not ladders, scaffolds, or ropes; could not balance or crawl, could occasionally bend, stoop, crouch, kneel, and squat; could occasionally maintain the neck in a comfortable position for fifteen to twenty minutes at a time but must avoid extreme neck motion; did not need an assistive device to walk; and must avoid dangerous fast-moving machinery and unprotected height.  (AR 1060).  The vocational expert answered that such a person could not perform Plaintiff's past work or any other work in the regional or national economy because of the restrictions on neck motion.  (AR 1061).

The third hypothetical again assumed a full range of light exertional work, with the following exceptions.  The person could lift twenty pounds occasionally and ten pounds frequently; could stand and

9

walk for four hours in an eight-hour day and sit for six hours; could climb as outlined in the first two hypotheticals; could not balance; could occasionally bend, stoop, crouch, kneel, and squat, but could not crawl; did not need an assistive device to walk, and should avoid exposure to the same hazards outlined in the first two hypotheticals. (AR 1061-62).  According to the vocational expert, such a person could perform unskilled light work such as small parts assembly; light work such as photocopy machine repair; and sedentary work such as lens gauging.  (AR 1062).  These occupations existed in significant numbers in the regional and national economy.  (Id.).

**IV.**

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[2] and that is expected to result in death or to last for a continuous period of at least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

---

[2]   Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  20 C.F.R. §§ 404.1510, 416.910.

10

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled. If not, proceed to step two.

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing her past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)   Is the claimant able to do any other work?  If not, the claimant is found disabled.   If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1); Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted).

11

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  <u>Bustamante</u>, 262 F.3d at 953-54.   If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"),[3] age, education, and work experience.  <u>Tackett</u>, 180 F.3d at 1098, 1100; <u>Reddick</u>, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).   The Commissioner may do so by the testimony of a VE or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").  <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2001).   When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a VE.  <u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000).

//

//

//

//

//

//

**V.**

---

[3]   Residual functional capacity is "the most [one] can still do despite [one's] limitations" and represents an assessment "based on all the relevant evidence in [one's] case record."  20 C.F.R. §§ 404.1545(a), 416.945(a).

1

2

### THE ALJ'S AND APPEALS COUNCIL'S DECISIONS[4]

3

    The ALJ employed the five-step sequential evaluation process and
concluded that Plaintiff was not disabled within the meaning of the
Social Security Act. (AR 755). At the first step, the ALJ observed
that Plaintiff had not engaged in substantial gainful activity since
January 1, 1997. (Id.). Next, he found that Plaintiff had the severe
impairments of lumbar spine disorder, cervical spine disorder, and non-
migraine headaches. (Id.). He found Plaintiff's allegations regarding
her limitations "only minimally credible" (id.), and specifically found
no mental impairments (AR 754). At the third step, he found that her
impairments did not meet one of the listed impairments. (AR 755).
Plaintiff had residual functional capacity to perform the full range of
light work. (Id.). At step four, the ALJ found that Plaintiff could
perform her past relevant work as a cashier. (Id.) She was therefore
not disabled. (Id.).

17

    In its Notice of Appeals Council Action, the Appeals Council
credited the ALJ's findings that Plaintiff (1) was "not engaged in
substantial gainful activity"; (2) had "severe impairments"; and (3)
that the "severe impairments do not meet or equal the criteria for a
listed impairment." (AR 741-42). However, the Appeals Council found
it was impossible to determine on the existing record whether
Plaintiff's "past relevant work as a cashier met the monetary threshold

25

26
    [4] Because the Appeals Council revised the ALJ's decision, the
Appeals Council's decision is final decision of the Commissioner. 20
27  C.F.R. § 404.981. However, because the Appeals Council incorporated
parts of the ALJ's decision into its own the Court discusses both
28  decisions.

1   for substantial gainful activity during the period at issue." (AR 742).

2   In its January 9, 2009 decision, the Appeals Council adopted the three

3   findings of the ALJ listed above.  (AR 739).  It supplemented those with

4   findings that (1) Plaintiff's "work as a cashier does not meet the

5   definition of past relevant work" in accordance with the regulations;

6   (2) Plaintiff had "no past relevant work or transferable skills to

7   occupations that are consistent" with the ALJ's findings regarding her

8   residual functional capacity; (3) "[b]ased on an exertional capacity for

9   light work, and the claimant's age, education and work experience," the

10  Social Security regulations "lead[] to a conclusion of 'not disabled'";

11  (4) "there are unskilled level jobs that exist in significant numbers

12  in the national economy that [Plaintiff] can perform, as directed" by

13  the Social Security regulations; and (5) Plaintiff is therefore not

14  disabled.  (AR 739).

### VI.

### STANDARD OF REVIEW

19       Under 42 U.S.C. § 405(g), a district court may review the

20  Commissioner's decision to deny benefits.  The court may set aside the

21  Commissioner's decision when his findings are based on legal error or

22  are not supported by substantial evidence in the record as a whole.

23  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v.

24  Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

26       "Substantial evidence is more than a scintilla, but less than a

27  preponderance."  Reddick, 157 F.3d at 720.  It is "relevant evidence

28  which a reasonable person might accept as adequate to support a

conclusion." <u>Id.</u>   To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" <u>Aukland</u>, 257 F.3d at 1035 (quoting <u>Penny v. Sullivan</u>, 2 F.3d 953, 956 (9th Cir. 1993)).   If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. <u>Reddick</u>, 157 F.3d at 720-21.

**VII.**

**DISCUSSION**

Plaintiff contends that there are several errors in the Commissioner's decision.   First, she claims that the ALJ improperly rejected the opinion of Dr. Ella-Tamayo that Plaintiff might need an assistive device for prolonged ambulation. (Jt. Stip. at 5).   Second, she claims that the ALJ misrepresented the record regarding Plaintiff's mental health when he stated that Plaintiff had no history of psychiatric treatment or of hospitalization due to mental illness. (Jt. Stip. at 9).   Third, he contends that the ALJ improperly rejected Plaintiff's subjective complaints and testimony.   (Jt. Stip. at 11). For the reasons discussed below, the Court disagrees with all of Plaintiff's contentions.

//

//

//

15

**A.    The ALJ Properly Considered Consultative Physician Ella-Tamayo's Opinion**

Plaintiff argues that the ALJ erred by not crediting Dr. Ella-Tamayo's statement that Plaintiff "might need an assistive device for prolonged ambulation." (AR 903). Plaintiff concedes that the ALJ discussed Dr. Ella-Tamayo's report in detail (see Jt. Stip. at 3-5; AR 751-52) but complains that because he did not provide specific, legitimate, and supported reasons for omitting discussion of a single statement in the report this case must be reversed or remanded. (Jt. Stip. at 5). This contention is meritless.

Initially, it should be noted that the ALJ incorporated many of Dr. Ella-Tamayo's findings into his ultimate RFC. Dr. Ella-Tamayo found that Plaintiff could lift and carry fifty pounds occasionally and twenty-five pounds frequently, stand and walk for 6 hours in an 8-hour workday and sitting would be unrestricted. (AR 751). This opinion would be consistent with the ALJ's finding that Plaintiff could perform light work. Accordingly, the ALJ did not reject the doctor's opinion but instead incorporated it into his findings. Plaintiff merely complains about one observation of the doctor, i.e., that Plaintiff may need an assistive device, that was not expressly discussed by the ALJ.

The ALJ may not reject significant, probative evidence without explanation. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984). This does not mean, however, that the ALJ must discuss every piece of evidence presented. See id. ("The Secretary, however, need not discuss all evidence presented to her."). Nor does it mean that a

16

reviewing court is "deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 755 (9th Cir. 1989). Here, it can be legitimately inferred that the ALJ did not find Dr. Ella-Tamayo's statement significant and probative.

First, Dr. Ella-Tamayo's statement that Plaintiff "<u>might</u> need an assistive device for prolonged ambulation" is equivocal. (AR 903 (emphasis added)). The ALJ must consider equivocal evidence along with other evidence, but need not credit it. <u>Magallanes</u>, 881 F.2d at 753. Second, that statement was undermined by Dr. Ella-Tamayo's own observation that Plaintiff's gait was "slow but normal in the room without the use of a cane." (AR 902). Third, substantial evidence in the record further undermines Dr. Ella-Tamayo's equivocal opinion regarding Petitioner's need for an assistive device. Dr. Maze, upon whose opinion the ALJ relied, found that Plaintiff was able to "ambulate[] independently" and specifically stated that an "assistive device is not required." (AR 974). Historical medical reports by treating physicians in 2000 and 2001 also reflect that Plaintiff had a normal gait without assistance. (<u>See</u> AR 861 ("Her gait is normal without assistance. She can heel-walk and toe-walk."); 864 ("Her gait is normal. She can walk on her toes without difficulty, walk on her heels with some difficulty.")). These findings confirm that she did not require an assistive device to ambulate. Finally, medical expert Dr. Landau testified, "There's no indication in the record that she requires an assistive device to walk." (AR 1033). Accordingly, the ALJ did not commit error by omitting mention of Dr. Ella-Tamayo's statement that Plaintiff might need an assistive device for prolonged ambulation.

1    Moreover, the ALJ's implicit finding that Plaintiff did not need

2    an assistive device is supported by substantial evidence.  As discussed

3    above, Dr. Maze, a consultative examining physician, examined Plaintiff

4    and found that an assistive device was unnecessary.  This constitutes

5    substantial evidence.  See <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir.

6    1984).  To the extent that it there is a contradiction between Dr.

7    Maze's opinion and Dr. Ella-Tamayo's, the ALJ has the responsibility to

8    resolve conflicts and ambiguities in the evidence.  <u>Magallanes</u>, 881 F.2d

9    at 750.  The ALJ's decision will be upheld "where the evidence is

10   susceptible to more than one rational interpretation." <u>Id.</u>  There is

11   no error in the ALJ's treatment of Dr. Ella-Tamayo's report.

13   **B.   <u>The ALJ's Statement That Plaintiff Had Not Received Mental Health</u>**

14        **<u>Treatment Does Not Require Remand</u>**

16   According to Plaintiff, the ALJ misrepresented the evidence by

17   stating, "The [Plaintiff] has no history of psychiatric treatment, nor

18   is there history of hospitalizations due to a mental condition." (Jt.

19   Stip. at 9; AR 753).  Plaintiff points to record evidence of her

20   treatment by the San Bernardino County Department of Behavioral Health.

21   (Jt. Stip. at 9; <u>see</u> AR 185-201, 346-383, 430-456, 628-670, 682-689,

22   696-708).  This argument fails because the treatment occurred prior to

23   the period relevant for Plaintiff's instant claim.

25   The ALJ noted that Plaintiff has filed four previous applications

26   for SSI.  (AR 748).  The most recent prior application, alleging similar

27   complaints and the same onset date, was denied by ALJ Mason D. Harrell,

Jr. on April 29, 2004.[5]   (AR 493, 749).   Because Plaintiff did not appeal the Appeals Council's April 28, 2005 denial of review, the ALJ's decision became final.   (AR 478, 749).   Plaintiff concedes that this prior decision discussed her previous mental health treatment.   (Jt. Stip. at 9; see AR 488-90).   That decision is res judicata as to the period prior to April 30, 2004.   (AR 749); See Lester v. Chater, 81 F.3d 821, 827 (9th Cir. 1995, as amended April 9, 1996) ("The Commissioner may . . . apply res judicata to bar reconsideration of a period with respect to which she has already made a determination, by declining to reopen the prior application.   As a general matter, the Commissioner's refusal to reopen her decision as to an earlier period is not subject to judicial review." (internal citations omitted)).   Accordingly, the ALJ stated he would not discuss evidence predating April 29, 2004 in detail, and that any references to such evidence were made "for historical purposes only."   (AR 749).   Thus, the relevant time period for Plaintiff's instant SSI claim is from April 30, 2004 to the hearing date of August 16, 2006.

The record does not show that Plaintiff received psychiatric treatment during this relevant time period.   Plaintiff admitted that she had not received mental health treatment in the two years prior to the hearing August 2006 hearing.   (AR 1054-55).   The record shows that she received mental health treatment from San Bernardino County between December 10, 1998 (see AR 200) and January 15, 2004 (see AR 696).   But there is no evidence in the record that she received mental health

---

[5]   Claims filed by Plaintiff in 1998, 2000, and 2001 were also denied.   (See AR 5, 12, 25, 36, 202).

19

treatment at any time after April 29, 2004.[6]  Thus, the ALJ's statement that Plaintiff had no history of psychiatric treatment or of hospitalization due to mental illness accurately reflects the record for the relevant time period.  Neither reversal nor remand is required.

**C.**   **The ALJ Properly Rejected Plaintiff's Subjective Complaints And Testimony**

Plaintiff asserts that the ALJ erred by "offer[ing] absolutely no discussion or credibility analysis of Plaintiff's subjective complaints and testimony." (Jt. Stip. at 12).  This contention is meritless.

The ALJ may reject a plaintiff's testimony if he makes an explicit credibility finding that is "supported by a specific, cogent reason for the disbelief." Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). "Unless there is affirmative evidence showing that the plaintiff is malingering, the Commissioner's reasons for rejecting the plaintiff's testimony must be 'clear and convincing.'" Lester, 81 F.3d at 834). Moreover, the ALJ may not discredit a claimant's testimony solely because the degree of pain alleged by the claimant is not supported by objective medical evidence. Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991) (en banc).

---

[6]  The record shows that Plaintiff received a behavioral health referral on September 14, 2004.  (AR 936).  However, there is no evidence in the record that she sought such treatment at that time. Moreover, as noted above, Plaintiff admitted she had not sought mental health treatment during this period.  (AR 1054-55).

20

Addressing Plaintiff's credibility, the ALJ found her "allegations to be minimally credible at best." (AR 753A). He identified four specific reasons for this finding:

(1)  Although Plaintiff complained of debilitating neck pain, an examination two weeks before the hearing revealed a full range of motion and no tenderness to palpation. The same was true in her examination by Dr. Maze. (AR 753A, 974, 980);

(2)  Dr. Maze "noted [Plaintiff] gave poor cooperation, poor effort, and she demonstrated a 'very prominent' give-away motor testing of the left arm." (AR 753A, 973);

(3)  Although Plaintiff complained of hand numbness, nerve conduction studies in December 2005 and January 2006 were normal. (AR 753A, 1012, 1013);

(4)  Dr. Forehand stated that Plaintiff "was obviously either exaggerating her symptoms or just flat out making them up." (AR 753A, 895).

On this record, there well may be affirmative evidence of malingering; but, assuming there is not, the ALJ offered clear and convincing reasons for rejecting Plaintiff's testimony. "In assessing the claimant's credibility, the ALJ may use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony."

1    <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1148 (9th Cir. 2001) (internal
2    quotation marks omitted).   Here, the ALJ cited Plaintiff's lack of
3    cooperation during consultative examinations, providing as a specific
4    example Dr. Maze's opinion that she was poorly cooperative and exhibited
5    poor effort. He also cited Dr. Forehand's specific opinion that she was
6    either exaggerating or outright fabricating her symptoms.   These
7    reasons, <u>in addition to</u> the lack of support for Plaintiff's degree of
8    pain alleged (<u>see</u> <u>Bunnell</u>, 947 F.2d at 346-47 (holding lack of medically
9    objective corroboration <u>alone</u> cannot be the reason for an adverse
10   credibility determination) constitute clear and convincing reasons for
11   rejecting her testimony.   <u>See</u> <u>Tonapetyan</u>, 242 F.3d at 1148 (relying on
12   ALJ's citation of plaintiff's lack of cooperation and exaggeration in
13   approving ALJ's adverse credibility determination).   No remand is
14   necessary.

15

16   //
17   //
18   //
19   //
20   //
21   //
22   //
23   //
24   //
25   //
26   //
27   //
28   //

## VIII.

### CONCLUSION

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[7] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: October 26, 2009.

/S/

_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

---

[7] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

23